**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HYBRID AUDIO, LLC, | CV 17-08968-RSWL-AGR |
| Plaintiff, | |
| | **ORDER re: Defendant's** |
| v. | **Motion to Dismiss** [35] |
| VISUAL LAND, INC., | |
| Defendant. | |

Currently before the Court is Defendant Visual Land, Inc.'s ("Defendant") Motion to Dismiss ("Motion") [35]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

**A. Factual Background**

Plaintiff Hybrid Audio, LLC ("Plaintiff") is a limited liability corporation existing under the laws of Virginia, with its principal place of business in

Virginia.  Compl. ¶ 2, ECF No. 1.  Defendant is a
corporation existing under the laws of California, with
its principal place of business in California.  Id.
¶ 3.

On February 25, 1997, Aware, Inc., Plaintiff's
predecessor-in-interest, filed an application for a
patent entitled Signal Processing Utilizing a Tree-
Structured Array, which the United States Patent and
Trademark Office ("PTO") issued as U.S. Patent No.
6,252,909 (the "'909 Patent") on June 26, 2001.  Id.
¶ 10.  After a reissue application was filed for the
'909 Patent, the '909 Patent reissued with certificate
number RE40,281 (the "'281 Patent"), the patent at
issue in this Action.  Id. ¶ 11.

On December 22, 2010, Aware, Inc. assigned all
right, title, and interest in the '281 Patent to Hybrid
Audio-Texas, which subsequently sent Defendant a letter
providing notice that Hybrid Audio-Texas believed that
Defendant's products infringed claims of the '281
Patent.  Id. ¶¶ 12-13.

On June 18, 2012, during the pendency of an
unrelated litigation, a request for reexamination of
the '281 Patent was filed with the PTO.  Id. ¶ 15.  The
'281 Patent expired on September 21, 2012.  Id. ¶ 16.
The PTO issued a reexamination certificate for the '281
Patent on December 1, 2015 confirming patentability of
the reexamined claims.  Id. ¶ 15.  During the period of
reexamination, Hybrid Audio-Texas was prohibited from

seeking royalties or filing lawsuits. <u>Id.</u> ¶ 16.

On March 28, 2016, Hybrid Audio-Texas assigned all right, title, and interest in the '281 Patent to Plaintiff. <u>Id.</u> ¶ 17.

The '281 Patent relates to audio signal processing technology used in conjunction with MP3 technologies. <u>Id.</u> ¶ 19.

**B.** **Procedural Background**

Plaintiff filed its Complaint on May 18, 2017 in the District of Massachusetts seeking royalties from Defendant for the alleged infringement of the '281 Patent from January 5, 2011, the date on which Plaintiff's predecessor-in-interest notified Defendant of its alleged infringement, through September 21, 2012, the expiration of the '281 Patent. <u>Id.</u> ¶ 18. Specifically, Plaintiff alleges that Defendant has and continues to directly infringe Claims 5-6, 9-13, 15-22, 24-30, 32-35, 38-42, 45-49, 50-51, 53, 55-61, 63, and 65-121 (the "Asserted Claims") of the '281 Patent. <u>Id.</u> ¶ 33.

On September 27, 2017, Plaintiff filed its unopposed Motion to Transfer Venue to the Central District of California [9]. The Motion to Transfer Venue was granted on September 28, 2017 [10], and the Action was transferred to this Court on December 14, 2017 [11].

Defendant filed the instant Motion [35] on February 3, 2018. Plaintiff opposed on February 20, 2018 [41],

and Defendant replied on February 27, 2018 [44].

## II. DISCUSSION

**A.  Legal Standard**

    1.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  A complaint must contain sufficient facts, accepted as true, to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quotation omitted).  Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)(citation omitted).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).  A court must presume all factual allegations to be true and draw all reasonable inferences in favor of the non-moving party.  Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).  The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005)(quoting Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974)).  While a complaint
need not contain detailed factual allegations, a
plaintiff must provide more than "labels and
conclusions" or "a formulaic recitation of the elements
of a cause of action."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007).

    2.   Patent Eligibility Under 35 U.S.C. § 101

      Patent eligibility is a question of law.  OIP
Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362
(Fed. Cir. 2015).  Section 101 of the Patent Act
provides that a patent may be obtained for "any new and
useful process, machine, manufacture, or composition of
matter, or any new and useful improvement thereof."  35
U.S.C. § 101.  The Supreme Court has "long held that
this provision contains an important implicit
exception: laws of nature, natural phenomena, and
abstract ideas are not patentable."  Alice Corp. Pty.
v. CLS Bank, Int'l, 134 S. Ct. 2347, 2354
(2014)(quotation omitted).  "The concern that drives
this exclusionary principle [is] one of preemption."
Id.  In other words, the concern is "'that patent law
not inhibit further discovery by improperly tying up
the future use of' these building blocks of human
ingenuity."  Id. (quoting Mayo Collaborative Servs. v.
Prometheus Labs, Inc., 566 U.S. 66, 85 (2012)).  The
Supreme Court in Alice warned courts, however, to
"tread carefully in construing this exclusionary
principle lest it swallow all of patent law," because

"[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" Id. (quoting Mayo, 566 U.S. at 71).

Under the two-step framework established in Alice and Mayo, the court first asks "whether the claims at issue are directed to one of those patent-ineligible concepts," as opposed to "patent eligible applications of those concepts." Id. at 2354-55. If so, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Id. at 2355 (quoting Mayo, 566 U.S. at 78-79). In this second step, the court looks for an "inventive concept," or "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Id. (quoting Mayo, 566 U.S. at 73).

**B.    Discussion**

    1.   Representative Claims

An invalidity challenge under § 101 is generally analyzed on a claim-by-claim basis. However, the Federal Circuit has acknowledged that the analysis can also be performed by way of representative claims. See Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018)("Courts may treat a claim as representative in

certain situations, such as if the patentee does not
present any meaningful argument for the distinctive
significance of any claim limitations not found in the
representative claim or if the parties agree to treat a
claim as representative."); Content Extraction &
Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776
F.3d 1343, 1348 (Fed. Cir. 2014)(finding representative
claims appropriate where district court had found
claims were "substantially similar and linked to the
same abstract idea").

Here, Defendant argues that Claims 5 and 18 are
representative of the Asserted Claims in the '281
Patent. Mot. to Dismiss ("Mot.") 4:6-20, ECF No. 35.
Plaintiff briefly addresses this argument in its
Opposition. However, Plaintiff's conclusory discussion
only touches on three other claims and does not provide
"meaningful argument for the distinctive significance
of any claim limitations not found in the
representative claim." Berkheimer, 881 F.3d at 1365;
see Opp'n 20:22-21:2. Claim 5 states:

> A signal processing method comprising:
> splitting a signal into subbands using a
> plurality of filter banks connected to form a
> tree-structured array having a root node and
> greater than two leaf nodes, each node
> comprising one filter bank having greater than
> two filters, and at least one of the leaf nodes
> having a number of filters that differs from the
> numbers of filters in a second leaf node.

Compl., Ex. 2 ("'281 Patent") at 24:23-30.

Claim 18 states:

> A signal processing method comprising:

synthesizing a signal using a plurality of synthesis filter banks connected to form a tree-structured array having greater than two leaf nodes and a root nod, wherein each of the nodes comprises one synthesis filter bank having a number of filters that differs from the number of filters in a second leaf node.

Id. at 25:4-11.

Put more simply, Claim 5 focuses on the splitting of the audio signal, while Claim 18 focuses on the synthesizing of the processed signal. The remaining claims are substantially similar to these two claims, and the Court treats Claims 5 and 18 as representative of the other Asserted Claims.

2. Nuijten Analysis

As a preliminary matter, the Court addresses Defendant's argument that the '281 Patent is patent-ineligible under the holding in In re Nuijten, 500 F.3d 1346 (Fed. Cir. 2007). In Nuijten, which the Federal Circuit decided prior to both Mayo and Alice, the Federal Circuit held that transitory signals did not fall within one of the four categories of patentable subject matter and thus were patent ineligible. Nuijten, 500 F.3d at 1357. Defendant misses a key holding in Nuijten—the Federal Circuit allowed processing claims and only denied patent eligibility for claims that covered the signals themselves. Id. at 1351.

Here, Claims 5 and 18 describe the process of splitting and synthesizing signals. See '281 Patent at 24:23-30, 25:4-11. In fact, both claims begin with, "A

signal processing method." _Id._ at 24:23, 25:4. Both claims are therefore processing claims. Neither claim covers a signal, and thus, a _Nuijten_ analysis is unnecessary. _See Femto-Sec Tech, Inc. v. Lensar, Inc._, 2016 U.S. Dist. LEXIS 189327 at *7-8 (C.D. Cal. June 8, 2016)("The Court, however, need not address the question because neither of the two independent claims of the '894 Patent purports to claim a [signal] _per se_.").

### 3. Alice Analysis

Defendant argues that the Asserted Claims are directed to the abstract idea of splitting and combining signals into a tree-structured array. Mot. 10:16-24. "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea.'" _Enfish, LLC v. Microsoft Corp._, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Rather, "the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." _Amdocs (Isr.) Ltd. v. Openet Telecom, Inc._, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

The Federal Circuit in _Enfish_ held that it did "not read _Alice_ to broadly hold that all improvements in computer-related technology are inherently abstract." _Enfish_, 822 F.3d at 1335. Instead, "[t]he Supreme Court has suggested that claims 'purport[ing] to

improve the functioning of the computer itself,' or 'improv[ing] an existing technological process' might not succumb to the abstract idea exception." Id. (quoting Alice, 134 S. Ct. at 2358-59). Therefore, "the first step in the Alice inquiry in this case asks whether the focus of the claims is on the specific asserted improvement in computer capabilities." Id. at 1335-36. If so, then the claim is not directed to an abstract idea, and the court need not move on to the second step of the Alice analysis. Id. at 1336.

Defendant avers that the Asserted Claims are not directed to an improvement in computer technology and are instead an abstract idea implemented on a general purpose computer. Def.'s Reply 12:5-24, ECF No. 44. However, "the invention's ability to run on a general-purpose computer [does not] doom[] the claims." Enfish, 822 F.3d at 1338. It is clear from the '281 Patent that the claims are directed to an improvement in the functioning of a computer. The claimed invention "requires less computational capability" than the prior art. '281 Patent at 14:9-12. Further, "[t]he present invention allows the quality of the playback to be varied in response to the computational capability of the playback platform without the use of multiple copies of the compressed material." Id. at 17:35-38. Previously, computer audio systems were limited to the use of costly equipment, which limited the usefulness of the audio systems. Id. at 4:53-57.

The claimed invention aims to solve this problem and allows for quality playback without the aliasing, or distortion, effects of the prior art. Id. at 11:25-29.

Ultimately, the claimed invention makes computers more efficient without sacrificing the quality of the sound, thus making the claims patent eligible. See Audio MPEG, Inc. v. HP Inc., No. 2:15-cv-00073-HCM-RJK, 2016 U.S. Dist. LEXIS 181710, at *38 (E.D. Va. June 29, 2016). The patent at issue in Audio MPEG, technology that "allows audio files to be compressed and stored using much less space," is very similar to the '281 Patent. Id. at *26. Dell, the defendant in Audio MPEG, made similar arguments to Defendant here, arguments that the court rejected. Id. at *36-39. For example, Dell argued that the plaintiffs were trying to patent mathematical formulas, an abstract idea. Id. at *37. However, the court in Audio MPEG noted that the plaintiffs were "not seeking to patent a mathematical formula or the general idea of receiving and outputting information," but rather, claims directed to "encode[] and decode[] a wide-band signal in a manner that takes into account the hearing capabilities of the human ear . . . [to produce] a realistic replica of the original signal . . . with the minimal amount of data." Id. at *39. The court found this to be a patent-eligible concept and thus denied Dell's motion at step one of Alice. Id. at *39-40.

Here, the '281 Patent involves a similar process of

compressing and decompressing an audio signal, taking into account the capabilities of the human ear and reducing the computational power needed.  <u>See</u> '281 Patent.  The Asserted Claims thus resemble those at issue in <u>Enfish</u> and <u>Audio MPEG</u>—claims directed to patent-eligible concepts.  <u>See</u> <u>Enfish</u>, 822 F.3d at 1338 ("[T]he claims here are directed to an improvement in the functioning of a computer.").

**III. CONCLUSION**

Based on the foregoing, the Court **DENIES** Defendant's Motion.

**IT IS SO ORDERED.**


DATED: April 5, 2018          /s/Ronald S. W. Lew

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge